UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

RONNIE HARRELL,

                              Plaintiff,                    **MEMORANDUM & ORDER**
                                                           10-CV-5894 (MKB)

                    v.

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, NASSAU COUNTY
POLICE OFFICERS JOSEPH LOBELLO, JOHN
TUCKER, RALPH SWANSON, GARY FARLEY
and REGIS BENEVILLE,

                              Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Ronnie Harrell brought the above-captioned action against Defendants County

of Nassau, Nassau County Police Department, Nassau County Police Officers Joseph Lobello,

John Tucker, Ralph Swanson and Gary Farley, and Ambulance Medical Technician Regis

Beneville, alleging false arrest, false imprisonment, malicious prosecution and excessive force in

violation of the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C.

§ 1983 and "the laws and statutes of the State of New York."  (Am. Compl. ¶ 1.)  Plaintiff also

alleged claims of negligence in hiring, training and supervising against Nassau County and

Nassau County Police Department, and claims of negligence in the performance of their duties

and intentional and negligent infliction of emotional distress against all Defendants.  Plaintiff has

since abandoned all of his claims except his excessive force and intentional infliction of

emotional distress claims.  Defendants moved for summary judgment.  The Court heard oral

argument on August 6, 2013.  For the reasons set forth below, Defendants' motion for summary

judgment is denied as to Plaintiff's claim for excessive force and granted as to Plaintiff's claim for intentional infliction of emotional distress.

## I. Background

On September 19, 2009, Plaintiff and his friend Phillip Silver attended a "barbecue backyard party" in Roosevelt, New York, of approximately 75–100 people.  (Pl. Dep. 17:10–21:16; Pl. 50-h 51:24–52:14, 54:21–25.[1])  When they arrived at the party, Plaintiff stayed outside the front of the house speaking on his cellular telephone and Silver went to the back of the house.  (Pl. Dep. 19:5–13; Pl. 50-h 5–12.)  While Plaintiff was having a conversation on the telephone, Plaintiff's friend Jason drove by the house.  (Pl. Dep. 19:14–17, 22:6–24.)  Jason stopped and spoke to Plaintiff.  (Id. at 19:17–19, 22:25–6.)  Plaintiff heard individuals behind him arguing about money while he was speaking with Jason.  (Id. at 19:20–20:2, 23:7–24:25.)  Plaintiff heard gunshots and started running.  (Id. at 24:23–25:11.)  Plaintiff was shot and fell to the concrete ground.  (Id. at 19:13–27, 25:10–26:14.)  Plaintiff started to get up, and several people yelled at him not to move.  (Id. at 26:4–27:11.)  Plaintiff fainted.  (Id. at 31:7–12.)  Plaintiff testified

---

[1]  Plaintiff testified at a 50-h municipal hearing ("Pl. 50-h") on April 23, 2010, and he was deposed ("Pl. Dep.") on March 9, 2012.  A "50-h hearing" is an examination provided for under New York General Municipal Law § 50-h.  See N.Y. Gen. Mun. Law § 50h(1) ("Wherever a notice of claim is filed against a . . . county . . . the . . . county . . . shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made, . . . which examination shall be upon oral questions unless the parties otherwise stipulate . . . .").  A plaintiff's testimony in a 50-h hearing may be considered by the Court on a motion for summary judgment.  See, e.g., Codling v. City of New York, 68 F. App'x 227, 229 (2d Cir. 2003) (considering the plaintiff's testimony at his 50-h hearing when analyzing the defendants' motion for summary judgment); Decker v. City of New York, No. 13-CV-0308, 2013 WL 4528531, at *3 (S.D.N.Y. Aug. 27, 2013) ("The admissions in the [50-h] hearing testimony may . . . be offered in connection with a motion for summary judgment or at trial."); Hall v. Cnty. of Saratoga, No. 10-CV-1120, 2013 WL 838284, at *7 (N.D.N.Y. Mar. 6, 2013) (analyzing the plaintiff's 50-h hearing testimony and his deposition testimony in connection with the defendants' motion for summary judgment).

during his deposition that, after being shot, he "started going crazy," but did not explain what he meant or provide any details as to how he was "going crazy." (*Id*. at 26:7–10.)

On September 19, 2009, at approximately 1:18 a.m., Nassau County Police Department ("NCPD") Communications Bureau received a 911 call for a fight on W. Roosevelt Avenue. (Defs. Ex. E ("NCPD Case Report") 1.) Upon arriving on the scene, NCPD officers[2] observed approximately 200 people in the street. (Defs. 56.1 ¶ 5; Pl. 56.1 ¶ 5.) Soon thereafter, NCPD officers heard gunshots, and a NCPD officer was flagged down by a group of people who stated that Plaintiff had been shot in the back by an unknown individual. (Defs. 56.1 ¶¶ 5–6; Pl. 56.1 ¶¶ 5–6.) NCPD officers requested assistance and that an ambulance be dispatched. (Defs. 56.1 ¶ 7; Pl. 56.1 ¶ 7.) After Plaintiff fainted, the police and the Ambulance Medical Technician ("AMT") Regis Beneville told everyone to move away from Plaintiff, picking him off the ground and putting him on a stretcher.[3] (Pl. Dep. 30:17–22.) Plaintiff was surrounded by approximately five to six officers and AMT Beneville as he was placed on the stretcher. (Pl. Dep. 32:13–33:3.) The parties dispute whether Plaintiff resisted the attempts of the officers and Beneville to render assistance. (Defs. 56.1 ¶ 14; Pl. 56.1 ¶ 14.) According to Beneville, Plaintiff attempted to flee from the officers. (Beneville Aff. ¶ 7.) NCPD officers and Beneville noted in their reports filed after the incident that Plaintiff refused to provide "information or history." (Defs. 56.1 ¶ 15; *see*

---

[2] Plaintiff does not identify the officers. According to Regis Beneville, the Ambulance Medical Technician ("AMT") who responded to the 911 call for assistance, Police Officers Joseph LoBello and Ralph Swanson were already at the location when he arrived, and Police Officers Gary Farley and John Tucker arrived thereafter. (Beneville Aff. ¶ 5.) Plaintiff spelled Officer LoBello's name as LeBello in his Amended Complaint. However, Defendants in their Answer referred to the officer as LoBello. The Court identifies him in this opinion as LoBello.

[3] During his 50-h hearing and his deposition, Plaintiff referred to the "ambulance person" as the "EMT." The parties agree that AMT Beneville is the individual Plaintiff identified. (*See, e.g.*, Def. 56.1 ¶¶ 8, 12; Pl. 56.1 ¶¶ 8, 12, 29.)

*also* NCPD Case Report; Defs. Ex. F ("NY EMS Report").)  Plaintiff asserts that NCPD officers

did not ask him any questions.  (Pl. 56.1 ¶ 15; *see also* Pl. 50-h 69:10–15.)

As Plaintiff was placed on the stretcher and into the ambulance, Plaintiff got "very upset"

and "went crazy" because he was in pain and was "laid . . . flat on [his] back where [he] got

shot." (Pls. 56.1 ¶ 16; Pl. 50-h 69:21–70:6.)  Plaintiff told the officers and Beneville "get off of

me, get off of me, get off of me," and "it's hurting, it's hurting, it's hurting." (Pl. 50-h 71:7–21.)

One of the officers "came in the [ambulance] and punched [Plaintiff] in the eye" while he was

being strapped to the stretcher. (Pl. 50-h 71:15–21; 77:21–78:3; *see also* Pl. Dep. 35:14–16.)

Plaintiff stated at his 50-h hearing that the officer "just came in, walked in, and punched

[Plaintiff's] eye for no reason," and then tried to move out of the way so Plaintiff would not be

able to see him.[4] (Pl. 50-h 71:18–21; 77:10–78:3.)  Plaintiff testified at his deposition that the

officer first tried to calm him down before punching him in the eye.  (Pl. Dep. 34:18–35:13.)

Plaintiff got blood in his eye.  (Pl. Dep. 36:19–22; Pl. 50-h 78:14–20.)  Plaintiff told Beneville

that he could not see, but Beneville did not assist Plaintiff.  (Pl. Dep. 36:18–24.)

According to Beneville, Plaintiff "needed to be restrained for his safety and the safety of

the personnel on the ambulance." (Beneville Aff. ¶ 7.)  However, even after being restrained,

Plaintiff "remained combative and uncooperative during transport."  (*Id.* ¶ 9; *see also* Defs. 56.1

---

[4]  It is unclear when this alleged punch occurred.  Plaintiff's description during the 50-h
hearing indicates that the alleged punch happened immediately after being placed in the
ambulance, while the ambulance was still on location and before Beneville gave Plaintiff an
oxygen mask.  (*See* Pl. 50-h 70:22–76:2 (describing being placed on the stretcher and telling the
officers and Beneville "its hurting," and stating "the next thing" was the alleged punch, which
occurred while the ambulance was still at the scene).)  However, Plaintiff's description during
his deposition indicates that the incident may have happened while Plaintiff was being
transported to the hospital and after Beneville gave Plaintiff an oxygen mask.  (*See* Pl. Dep.
34:18–37:10 (stating that he did not remember if the ambulance was moving or parked, but that
the incident occurred after Beneville gave him an oxygen mask and the offending officer tried to
calm him down).)

¶ 16; Pl. 56.1 ¶ 16; NY EMS Report.)  Plaintiff "refused to allow [AMT Beneville] to place an IV or take his blood pressure" and "continuously remove[d] his oxygen mask."  (Beneville Aff. ¶¶ 7–9.)  Plaintiff's physical and mental state were communicated to the Nassau University Medical Center's ("hospital") trauma team, and the trauma team requested that Plaintiff be "immobilized as best as possible."  (*Id.* ¶ 10.)  Beneville denies that he or any of the officers punched, hit or kicked Plaintiff.[5]  (Pl. 56.1 ¶ 16; Pl. Dep. 34:18–36:22; Beneville Aff. ¶ 12.)

After arriving at the hospital, Plaintiff was immediately sedated.  (Defs. 56.1 ¶ 19; Pl. 56.1 ¶ 19; Beneville Aff. ¶ 11; Pl. Dep. 37:17–38:2; Defs. Exs. I, J.)  The sedative put Plaintiff to sleep.  (Pl. Dep. 37:22–25.)  When Plaintiff awoke, he had a cut with a Band-Aid on his eye that covered the side of his face.  (Pl. Dep. 38:9–12.)  Doctors gave him ice to apply to his eye to reduce the swelling.  (Pl. 50-h 96:25–97:11.)  According to hospital records, Plaintiff's chief complaint was a gunshot wound to the left interior scapular region of the back.  (Defs. 56.1 ¶ 20; Pl. 56.1 ¶ 20; Defs. Exs. I, J.)  Plaintiff had an "abrasion over the left eyebrow," but "no other injuries were noted."  (Defs. 56.1 ¶21; Pl. 56.1 ¶21; Defs. Ex. K, L.)  Plaintiff submitted photographs of his face, purportedly taken soon after the incident, that depict an abrasion over his left eyebrow.[6]  (Pl. Ex. C.)

Plaintiff was released from the hospital on or about September 20, 2009, (Defs. 56.1 ¶ 22; Pl. 56.1 ¶ 23), and filed a complaint with the police about his shooting.  (Pl. Dep. 40:6–8.)  On September 21, 2009, NCPD Public Information Office issued a News Release requesting that

---

[5]  Plaintiff does not specify which officers were present and which officer allegedly punched him.  In his deposition, Plaintiff testified that he did not know which officer punched him.  (Pl. Dep. 35:17–25; *see also id.* at 32:17–36:17.)  Plaintiff only remembers that the officer was white and tall.  (*Id.* at 36:2–10.)

[6]  Defendants claim that these photographs are inadmissible, (Defs. Reply 1), but have not provided any explanation or legal support for their claim.

"anyone with information regarding [the shooting] contact Crime Stoppers at 1-800-244-TIPS."
(Defs. 56.1 ¶ 25; Pl. 56.1 ¶ 25.)  According to Defendants, Plaintiff did not return telephone calls
or otherwise assist NCPD in the investigation of his shooting.  (Defs. 56.1 ¶ 26; *see* NCPD Case
Report 2–3.)  Plaintiff claims that no police officers came to speak with him while he was in the
hospital and no one from the police precinct contacted him about the shooting.  (Pl. Dep. 39:20–
23, 42:21–24, 46:8–22.)

## II.   Discussion

### a.   Standard of Review

Summary judgment is proper only when, construing the evidence in the light most
favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant
is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Kwong v. Bloomberg*,
--- F.3d ---, ---, 2013 WL 3388446, at *4 (2d Cir. July 9, 2013); *Redd v. N.Y. Div. of Parole*, 678
F.3d 166, 174 (2d Cir. 2012).  The role of the court is not "to weigh the evidence and determine
the truth of the matter but to determine whether there is a genuine issue for trial."  *Cioffi v.
Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson
v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue of fact exists when there is
sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477
U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary
judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*
The court's function is to decide "whether, after resolving all ambiguities and drawing all
inferences in favor of the non-moving party, a rational juror could find in favor of that party."
*Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b.  Improper Parties

Plaintiff cannot maintain his suit against NCPD.  NCPD is an administrative arm of the County of Nassau, and under New York law, agencies of a municipality are not suable entities. *See Miller v. County of Nassau*, No. 10-CV-3358, 2013 WL 1172833, at *4 (E.D.N.Y. Mar. 19, 2013) (dismissing claims against the Nassau County Sheriff's Department because "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued"); *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) ("The [Nassau County] Police Department is an administrative arm of the County of Nassau.  Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued."); *Donaldson v. Nassau Cnty. Police Dep't 3rd Precinct*, No. 10-CV-1690, 2010 WL 2976520, at *2 (E.D.N.Y. July 22, 2010) (dismissing claims against the Nassau County Police Department 3rd Precinct because it is not a suable entity); *Robischung Walsh v. Nassau Cnty. Police Dep't*, 699 F. Supp. 2d 563, 565 (E.D.N.Y. 2010) (dismissing claim against NCPD as an arm of the municipality). Plaintiff's claims against NCPD are dismissed.

Plaintiff's claims against the County of Nassau are also dismissed.  In order to hold a municipal entity liable under Section 1983, a plaintiff must establish that he was deprived of his constitutional rights, and that the constitutional violation was caused by a "municipal policy or custom."  *Monell v. Dep't of Social Servs. of N.Y.C.*, 436 U.S. 658, 694–95 (1978).  At oral argument counsel confirmed that Plaintiff was not pursuing a *Monell* claim against the County of Nassau.  (Oral Arg. Tr. 16:2–5.)  In addition, Plaintiff failed to present any evidence that the alleged use of excessive force is attributable to a municipal policy or custom.  *See Piccone v.*

*Town of Webster*, 511 F. App'x 63, 64–65 (2d Cir. 2013) ("[T]o hold a city liable under § 1983

for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three

elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a

denial of a constitutional right." (alteration in original) (quoting *Torraco v. Port Auth. of N.Y. &

N.J.*, 615 F.3d 129, 140 (2d Cir. 2010))); *see also Askins v. Doe No. 1*, --- F.3d ---, ---, 2013 WL

4488698, at *3–4 (2d Cir. Aug. 23, 2013) ("Municipalities are held liable if they adopt customs

or policies that violate federal law and result in tortious violation of a plaintiff's rights . . . .");

*Phelan ex rel. Phelan v. Mullane*, 512 F. App'x 88, 90 (2d Cir. 2013) (granting summary

judgment to a defendant, assumed to be a state actor, because plaintiffs "failed to adduce

evidence raising a triable issue of fact as to a policy or custom of inadequate supervision or

training causally responsible for the injuries alleged").  Plaintiff's claims against Nassau County

are therefore dismissed.

> ### c.   Section 1983 Excessive Force Claim

> #### i.   Constitutional Right Allegedly Violated

"In addressing an excessive force claim brought under § 1983, analysis begins by

identifying the specific constitutional right allegedly infringed by the challenged application of

force." *Graham v. Connor*, 490 U.S. 386, 394 (1989).  An excessive force claim may be brought

under the Fourth or Eighth Amendments, or as a substantive due process claim under the

Fourteenth Amendment.  The law is clear, however, that "[w]here another provision of the

Constitution provides an explicit textual source of constitutional protection, a court must assess a

plaintiff's claims under that explicit provision and not the more generalized notion of substantive

due process." *Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000); *Brown v. Baldwin Union

Free Sch. Dist.*, 603 F. Supp. 2d 509, 515 (E.D.N.Y. 2009) (quoting *Kia P.*, 235 F.3d at 757–58;

*see also Piland v. Esposito*, No. 09-CV-825, 2010 WL 918306, at *2 (D. Conn. Mar. 11, 2010)

("The Supreme Court has held that where another provision of the Constitution provides an

explicit textual source of constitutional protection, a court must assess a plaintiff's claims under

that explicit provision and not the more generalized notion of substantive due process." (quoting

*Conn v. Gabbert*, 526 U.S. 286, 293 (1999))).

"Because the Fourth Amendment provides an explicit textual source of constitutional

protection" against excessive force used in the course of an arrest, investigatory stop, or other

seizure of a free citizen, claims of excessive force in that context must be analyzed under the

Fourth Amendment's "reasonableness" standard rather than under the more generalized

"substantive due process" approach. *Graham v. Connor*, 490 U.S. at 395; *see also Tracy v.

Freshwater*, 623 F.3d. 90, 96 (2d Cir. 2010) ("The Fourth Amendment prohibits the use of

unreasonable and therefore excessive force by a police officer."); *Bonilla v. Jaronczyk*, 354 F.

App'x 579, 581 (2d Cir. 2009) ("[C]laims of excessive force in the course of an arrest,

investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth

Amendment . . . ." (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. at

395)). Because the Fourth Amendment's test of reasonableness is one of "objective

reasonableness," the inquiry is fact specific and requires a balancing of various factors. *Tracy*,

623 F.3d at 96; *see also Graham v. City of New York*, 928 F. Supp. 2d 610 (E.D.N.Y. 2013)

("The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a

police officer in the course of an arrest." (internal quotation marks omitted) (quoting *Tracy*, 623

F.3d at 96)); *Wims v. N.Y.C. Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *4 (S.D.N.Y.

July 20, 2011) ("When excessive force is alleged, a court must determine 'whether the officers'

actions are 'objectively reasonable' in light of the facts and circumstances confronting them,

without regard to their underlying intent or motivation.'" (quoting *Graham v. Connor*, 490 U.S. at 397)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. at 396–97. A court considers the totality of the circumstances when determining whether excessive force was used against a plaintiff. *Tracy*, 623 F.3d at 96. When determining whether an officer's actions constitute excessive force, a court considers: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96.

Excessive force claims that arise outside of the context of a law enforcement official's arrest, investigatory stop or other seizure are analyzed under the due process clause of the Fourteenth Amendment.[7] *See County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998) (applying substantive due process standard because "[t]he Fourth Amendment covers only 'searches and seizures,' neither of which took place here"); *Barlow v. Male Geneva Police Officer who Arrested me on January 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (assessing whether to analyze the plaintiff's excessive force claim under the Fourth or Fourteenth Amendment, and stating that the first step is to determine "whether there has been a constitutionally cognizable seizure"); *Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998)

---

[7] Excessive force claims by prisoners are analyzed under the Eighth Amendment. *See, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010).

("[O]utside the context of an arrest, a plaintiff may make claims of excessive force under § 1983 under the Due Process Clause of the Fourteenth Amendment."); *Cooper v. City of Hartford*, No. 07-CV-823, 2009 WL 2163127, at *12–13 (D. Conn. July 21, 2009) (only considering Fourteenth Amendment claim and not Fourth Amendment claim where the plaintiff failed to allege that the circumstances amounted to a search or seizure); *Golden v. City of New York*, No. 98-CV-998, 2000 WL 134690, at *4–5 (S.D.N.Y. Feb. 4, 2000) (excessive force claim arising out of altercation that occurred prior to the arrest was governed by the due process clause of the Fourteenth Amendment, not the Fourth Amendment).

Plaintiff concedes that he was not under arrest.  (Pl. Opp'n 3.)  Plaintiff also was not seized pursuant to the Fourth Amendment when he was transported to the hospital.  "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'"  *Graham v. Connor*, 490 U.S. at 399 n.10 (alteration in original) (citations omitted). Although Plaintiff was restrained and, according to Defendants, he resisted medical attention, Plaintiff asserts that he "did not resist attempts by [Beneville] and the NCPD to provide him with assistance."  (Pl. 56.1 ¶ 14.)  Since Plaintiff asserts that he was not forced to go to the hospital against his will, no "seizure" occurred for purposes of the Fourth Amendment.  *See Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998) ("Plaintiffs do not assert that they were arrested or seized, and therefore these [excessive force] claims fall outside the Fourth Amendment protections applied in *Graham v. Connor* . . . , and are governed instead by the Due Process Clause of the Fourteenth Amendment."); *Reeves v. Akinwunmi*, No. 07-CV-4964, 2008 WL 2114885, at *1 (E.D.N.Y. May 19, 2008) (finding that plaintiff was not subjected to excessive force under Fourth Amendment where he did "not allege that he was subject to a Fourth

Amendment 'seizure' that would give rise to a reasonableness inquiry" (citing *Graham v. Connor*, 490 U.S. at 395)).  In addition, counsel conceded at oral argument that Plaintiff was not seized when he was transported to the hospital for medical treatment.[8]  (Oral Arg. Tr. 4:14–18.)

Plaintiff's claim is therefore appropriately analyzed under the Fourteenth Amendment. *See Salamacha v. Lynch*, 165 F.3d 14 (2d Cir. 1998) ("In order to establish a claim that the alleged use of excessive force by a local law enforcement officer violates the search and seizure provisions of the Fourth Amendment . . . a plaintiff subjected to that force must establish that he or she was unreasonably seized."  (quoting *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989))); *Bourn v. Bull*, No. 09-CV-212, 2013 WL 1285858, at *4–5 (D. Vt. Mar. 27, 2013) ("Given that there was no seizure under the Fourth Amendment, the [c]ourt must analyze [the plaintiff's] claim under the substantive due process requirements of the Fourteenth Amendment." (citing *Lewis,* 523 U.S. at 843, 846)); *Smith v. Carey*, No. 10-CV-1247, 2012 WL 6923338, at *5 (N.D.N.Y. Dec. 28, 2012) (analyzing excessive force claim brought by an involuntarily committed individual under the Fourteenth Amendment because it arose in the non-seizure, non-prisoner environment), *report and recommendation adopted*, No. 10-CV-1247, 2013 WL 237722, at *5 (N.D.N.Y. Jan. 22, 2013).  Since Plaintiff was not arrested and was not seized, Plaintiff's excessive force claim is appropriately analyzed under the substantive due process standard.

---

[8]  In his opposition to Defendants' motion for summary judgment, Plaintiff argued that the protections of the Fourth Amendment govern.  (Pl. Opp'n 7.)  However, at oral argument, counsel for Plaintiff admitted that because Plaintiff was not in custody and was not seized, his excessive force claim should be analyzed under the Due Process Clause of the Fourteenth Amendment.  (Oral Arg. Tr. 4:19–22.)

ii.   **Due Process Clause Analysis**

The Due Process Clause of the Fourteenth Amendment protects citizens from "unjustified intrusions on personal security." *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008) (quoting *Ingraham v. Wright*, 430 U.S. 651, 673 (1977)); *see also Cooper v. City of Hartford*, No. 07-CV-823, 2009 WL 2163127, at *13 (D. Conn. July 21, 2009) (quoting *Matican*, 524 F.3d at 155). "To prevail on an excessive force claim under the Due Process Clause, a plaintiff must show that the defendant state actor engaged in conduct that 'shocks the conscience.'" *Golden,* 2000 WL 134690, at *4 (quoting *Hemphill*, 141 F.3d at 419); *Faccio v. Eggleston*, No. 10-CV-783, 2011 WL 3666588, at *11 (N.D.N.Y. Aug. 22, 2011) (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252–53 (2d Cir. 2001)). The Second Circuit has held that:

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Lindsey v. Butler*, No. 11-CV-9102, 2013 WL 3186488, at *3 (S.D.N.Y. June 24, 2013) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *Hemphill*, 141 F.3d at 419 (quoting *Johnson*, 481 F.2d at 1033); *see also D'Attore v. City of New York*, No. 10-CV-6646, 2013 WL 1180395, at *5 (S.D.N.Y. Mar. 15, 2013) ("Excessive force claims have subjective and objective components. The objective component focuses on the harm done in light of 'contemporary standards of decency,' and asks whether 'the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions.' The subjective component requires a showing that the defendant had 'the necessary level of culpability, shown by actions characterized by wantonness' in light of the particular circumstances surrounding the challenged conduct." (citations omitted)); *Yeldon v. Sawyer*, No. 10-CV-266, 2012 WL 1995839, at *4

(N.D.N.Y. Apr. 26, 2012) ("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 239, 251–52 (2d Cir. 2001))), *report and recommendation adopted*, No. 10-CV-266, 2012 WL 1987134 (N.D.N.Y. June 4, 2012). In practice, this analysis "utilizes the same standard as claims by convicted prisoners under the Eighth Amendment." *Tavares v. City of New York*, No. 08-CV-3782, 2011 WL 5877548, at *3 (S.D.N.Y. Nov. 23, 2011) (citing *Mayo v. County of Albany*, 357 F. App'x 339, 341 (2d Cir. 2009)); *see also D'Attore*, 2013 WL 1180395, at *5 ("Courts considering a Fourteenth Amendment claim for excessive force apply the same standards used to evaluate excessive force claims brought by convicted inmates under the Eighth Amendment." (citing *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999))); *Gashi v. County of Westchester*, No. 02-CV-6934, 2007 WL 749684, at *5 (S.D.N.Y. Mar. 12, 2007) ("[T]he same legal standard applies to excessive force claims brought under the Eighth and Fourteenth Amendments."). Viewing the facts in the light most favorable to Plaintiff in applying the factors suggested by the Second Circuit — the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted and the reason for the use of force — the Court concludes that a reasonable jury could find that excessive force was used against Plaintiff in violation of his substantive due process rights.

### 1. Need for Application of Force

The genesis of Plaintiff's claim is his own combative behavior after he was shot in the back. According to Plaintiff, he "started going crazy" and was extremely combative after being shot, (Pl. 56.1 ¶ 12; Pl. Dep. 26:4–27:11), and he continued being combative even after being placed on the stretcher, (Pl. 56.1 ¶ 16). Officers attempting to restrain an individual for medical

14

transport may be authorized to use force.  *See, e.g.*, *Nogbou v. Mayrose*, No. 07-CV-3763, 2009 WL 3334805, at *7 (S.D.N.Y. Oct. 15, 2009) (Fourth Amendment context) (dismissing excessive force claim because, among other things, plaintiff was "behaving in an aggressive and combative manner necessitating the application of a minimal amount of force to restrain [p]laintiff until he reached [the] Hospital"), *aff'd*, 400 F. App'x 617 (2d Cir. 2010); *Vazquez v. Marciano*, 169 F. Supp. 2d 248, 253 (S.D.N.Y. 2001) (Fourth Amendment context) (holding that "the force used by [the officer] to restrain plaintiff in the ambulance does not give rise to any claim under Section 1983"); *c.f. Stanley v. Meier*, No. 09-CV-1643, 2012 WL 2367386, at *5 (D. Conn. June 21, 2012) (Fourth Amendment context) ("When an individual is resisting attempts to subdue him and threatening officers, limited use of force is reasonable." (citing *Lopez v. City of New York*, No. 05-CV-10321, 2009 WL 229956, at *8 (S.D.N.Y. Jan. 30, 2009))).  There is evidence in the record that Plaintiff, who had suffered a gunshot wound to his back, was "combative" while being transported to the hospital.  This factor therefore weighs in favor of Defendants, since it appears that some level of force was necessary to restrain Plaintiff.

### 2.  Need for Force Versus Amount of Force Used

Whether the need for force was commensurate with the amount of force used is a factor to be considered in analyzing an excessive force claim.  *See, e.g.*, *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 129 (2d Cir. 2009) (Fourth Amendment context) (analyzing the relationship between the amount of force that was used and the need for force); *Elliott v. County of Monroe*, 115 F. App'x 497, 498 (2d Cir. 2004) (Fourth Amendment context) (analyzing excessive force claim and inquiring into whether, "to the extent such force was deliberate, was that degree of force reasonably necessary to effect plaintiff's arrest under the circumstances then confronting the officers"); *Cannon v. Wood*, No. 10-CV-01332, 2013 WL 838299, at *8

(N.D.N.Y. Jan. 22, 2013) (examining "the correlation between that need [for the application of force] and the amount of force used" when assessing the plaintiff's Eighth Amendment excessive force claim), *report and recommendation adopted*, No. 10-CV-1332, 2013 WL 838294 (N.D.N.Y. Mar. 6, 2013); *Ford v. Phillips*, No. 05-CV-6646, 2007 WL 946703, at *7 (S.D.N.Y. Mar. 27, 2007) (Eighth Amendment context) (granting defendants summary judgment because plaintiff, who brutally attacked an officer, did not allege that "defendants used force even commensurate with the force that he used" but instead alleged that the officers "punched and kicked him as they got him under control"); *Smith*, 2012 WL 6923338, at *6 (Fourteenth Amendment context) ("Here, the evidence shows that Defendants used an appropriate amount of force to confine [involuntarily committed] Plaintiff to the side room after he began yelling at staff.  The only contact between Plaintiff and any of the Defendants occurred when Defendant Liggins pushed Plaintiff and, arguably, when Defendant Fullem kicked the door while Plaintiff's hand was on it.  Plaintiff did not fall as a result of the push and suffered no injury other than swelling from the kick.  There is no evidence that any Defendant used any more force than was necessary to close the door or that any Defendant continued to use force after the door was closed.").  "[N]ot every push or shove by a state officer constitutes a violation of substantive due process."  *Hernandez v. City of New York*, No. 00-CV-9507, 2004 WL 2624675, at *7 (S.D.N.Y. Nov. 18, 2004) (quoting *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987)); *see also Cannon*, 2013 WL 838299, at *7 ("[A] de minimis use of force will rarely suffice to state a constitutional claim[.]' . . . In that respect, '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" (citations omitted)).

Plaintiff does not object to the limited amount of force used to initially restrain him and place him on the stretcher.  Instead, Plaintiff argues that the "act of punching [him] in the face"

16

after he was restrained in the ambulance and on his way to the hospital was unjustified.  (Pl.

Opp'n 4.)  The Court agrees.  According to Defendants, Plaintiff "needed to be restrained for his

safety and the safety of the personnel in the ambulance," (Beneville Aff. ¶ 8), but they do not

explain how Plaintiff was endangering the safety of Beneville or the officers while lying on his

back and while being strapped to the stretcher.[9]  *See Cannon*, 2013 WL 838299, at *8–9

(denying summary judgment where some amount of force was used and the parties disputed the

circumstances under which force was used, because a reasonable jury could find that the plaintiff

posed no threat and therefore "force was used maliciously"); *McClendon v. Cnty. of Nassau*, No.

11-CV-0190, 2012 WL 4849144, at *10 (E.D.N.Y. Oct. 11, 2012) (denying summary judgment

on plaintiff's excessive force claim because genuine issues of material fact remained on, among

other things, plaintiff's behavior towards the officers prior to use of force, and the use of force

may have been "[u]nnecessary"); *Yeldon*, 2012 WL 1995839, at *5–6 (finding that, although

defendants presented evidence that they "only used *de minimis* force for a limited period of time

and only for the purpose of restoring order, . . . . if [p]laintiff's sworn testimony in his deposition

is to be believed, [d]efendants assaulted [p]laintiff without any 'reason,'" and therefore genuine

issues of material fact precluded summary judgment), *report and recommendation adopted*, No.

10-CV-00266, 2012 WL 1987134 (N.D.N.Y. June 4, 2012).  Plaintiff admits that he continued to

---

[9]  Defendants dispute that Plaintiff was punched, but it is not for this Court but rather a
jury to decide whether to credit Plaintiff's version or Defendant's version of the facts.  *See In re
Fosamax Products Liab. Litig.*, 707 F.3d 189, 194 n.4 (2d Cir. 2013) ("[T]he general rule
remains that 'a district court may not discredit a witness's deposition testimony on a motion for
summary judgment, because the assessment of a witness's credibility is a function reserved for
the jury.'" (quoting *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 725 (2d Cir.
2010)), *cert. denied*, 569 U.S. ---, 133 S. Ct. 2783 (2013); *Milfort v. Prevete*, No. 10-CV-4467,
2013 WL 519041, at *5 (E.D.N.Y. Feb. 13, 2013) ("[T]he credibility of witnesses is not to be
assessed by the court on a motion for summary judgment.  Resolutions of credibility conflicts
and choices between conflicting versions of the facts are matters for the jury, not for the court on
summary judgment." (citations and internal quotation marks omitted)).

be combative even after he was initially restrained. (Pl. 56.1 ¶ 16.) The hospital trauma team did instruct that Plaintiff should be immobilized as "best as possible," and Beneville had a difficult time determining Plaintiff's blood pressure and attaching an intravenous line to Plaintiff. (Beneville Aff. ¶¶ 7–10.) If a jury believes Plaintiff's statement that he was punched in the face, a jury could also find that a punch to Plaintiff's face by a police officer, while Plaintiff was being restrained on a stretcher with a gunshot wound to his back and was complaining about the amount of pain caused by the shooting, was "beyond what was necessary to subdue" Plaintiff. *See Lagasse, City of Waterbury*, No. 09-CV-391, 2011 WL 2709749, at *8 (D. Conn. July 12, 2011) (Fourth Amendment context) ("In order to succeed on an excessive force claim, a plaintiff must 'show that [the officer] used more force than was necessary to subdue him.'" (quoting *Curry v. City of Syracuse,* 316 F.3d 324, 332 (2d Cir. 2003))). This factor weighs in favor of Plaintiff.

### 3. Extent of Injury Inflicted

"[T]he extent of injury is a relevant factor" in evaluating an excessive force claim. *Abreu v. Nicholls*, 368 F. App'x 191, 193 (2d Cir. 2010); *see also Murray v. Johnson No. 260*, 367 F. App'x 196, 198 (2d Cir. 2010) ("To satisfy the objective condition [of an excessive force claim], one must show that the resulting harm or deprivation was sufficiently serious. With respect to this element, *Hudson* [*v. McMillan*, 503 U.S. 1 (1992),] makes clear that a claim of excessive force may be established even if the victim does not suffer serious or significant injury, provided that the amount of force used is more than *de minimis*, or involves force that is repugnant to the conscience of mankind." (citations and internal quotation marks omitted)); *D'Attore*, 2013 WL 1180395, at *5 (S.D.N.Y. Mar. 15, 2013) ("The objective component focuses on the harm done in light of 'contemporary standards of decency,' asks whether 'the deprivation alleged is

sufficiently serious or harmful enough to reach constitutional dimensions.' . . . The Constitution's prohibition against excessive force does not extend to 'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" (citations omitted)); *Yeldon*, 2012 WL 1995839, at *5–6 (denying summary judgment where plaintiff suffered a swollen ear and a scraped shin because genuine issues of material fact remained regarding defendants' claim that they "only used *de minimis* force for a limited period of time and only for the purpose of restoring order").  "*De minimis* injuries 'include short-term pain, swelling, and bruising, . . . brief numbness from tight handcuffing, . . . claims of minor discomfort from tight handcuffing, . . . and two superficial scratches with a cut inside the mouth.'"  *Porath v. Bird*, No. 11-CV-963, 2013 WL 2418253, at *7 (N.D.N.Y. June 3, 2013) (citations omitted) (analyzing Fourth Amendment excessive force claim); *see also Hudson*, 503 U.S. at 10 (finding that "the blows directed at [plaintiff], which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes"); *Jackson v. City of New York*, No. 10-CV-2530, 2013 WL 1622165, at *11–12 (E.D.N.Y. Apr. 16, 2013) (denying summary judgment on the plaintiff's Fourth Amendment excessive force claim where, after being handcuffed, she suffered contusions on her back, tenderness in her abdomen, and swelling around her wrists); *Graham v. City of New York*, 928 F. Supp. 2d 610 (denying summary judgment of the plaintiff's Fourth Amendment excessive force claim where plaintiff complained that he was forcibly removed from his car and handcuffed without justification and, although he experienced no lasting damage, suffered immense pain and swelling); *Laporte v. Fisher*, No. 11-CV-9458, 2012 WL 5278543, at *3–4 (S.D.N.Y. Oct. 24, 2012) (finding that a punch to the plaintiff's stomach which caused him to lose his breath could constitute excessive force if done to harass plaintiff); *Hodge v. Village of Southampton*, 838 F.

Supp. 2d 67, 77–78 (E.D.N.Y.2012) (denying summary judgment where plaintiff was treated for bruising at a hospital and discharged with Motrin).

Plaintiff contends that an officer punched him in the eye, causing it to bleed.  (Pl. 56.1 ¶ 28.)  Hospital records establish that Plaintiff suffered an "abrasion over the left eyebrow." (Defs. 56.1 ¶ 21; Pl. 56.1 ¶ 21; Defs. Exs. K, L.)  Plaintiff was given ice to reduce the swelling. (Pl. 50-h 96:25–97:11.)  Although the abrasion was only temporary and Plaintiff suffered no lasting damage, the force applied, as discussed above, was more than de minimus.  Therefore, this factor arguably weighs in favor of Plaintiff.

### 4.   Purpose of Force Applied

Courts also consider "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Lindsey*, 2013 WL 3186488, at *3; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (Eighth Amendment) (explaining that the "core judicial inquiry" is not "whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'" (quoting *Hudson*, 503 U.S. at 7)); *see also Yeldon*, 2012 WL 1995839, at *4 (Fourteenth Amendment context) ("To determine whether an excessive force violation occurred, the 'core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"); *McCrory v. Belden*, No. 01-CV-0525, 2003 WL 22271192, at *6 (S.D.N.Y. Sept. 30, 2003) (Eighth Amendment context) ("Depending on the specific facts of how the altercation began and proceeded, a reasonable fact-finder could conceivably conclude that some of the actions that plaintiff attributes to each of these defendants represented malicious or sadistic

conduct, or at least reflected an excessive and unreasonable use of force to keep or restore order.").

According to Plaintiff, the officer punched him without provocation while he was crying and in extreme pain after being shot in the back and was being restrained on a stretcher.  (Pl. 56.1 ¶ 16; Pl. 50-h 69:21–71:21, 77:10–78:3.)  Defendants argue that Plaintiff was not punched in the eye, force was only used to calm and subdue Plaintiff and force was necessary in order to "render pre-hospital assistance and to transport Plaintiff to the hospital after being shot."  (Def. Mem. 1; Def. Reply 5; Beneville Aff. ¶¶ 7–10.)  Whether Plaintiff was punched and the officer's motivation for punching Plaintiff are issues to be decided by a jury.  *See Bourn*, 2013 WL 1285858, at *5 (holding that plaintiff failed to establish an excessive force claim under the Fourteenth Amendment because it was *undisputed* that "there was no intent to cause any sort of harm").  Plaintiff's testimony creates an issue of fact as to whether Plaintiff was punched and whether the officer who allegedly punched Plaintiff acted with the necessary level of malice and wantonness to sustain a Fourteenth Amendment excessive force claim.[10]  *See Pooler v. Hempstead Police Dep't*, 897 F. Supp. 2d 12, 26 (E.D.N.Y. 2012) (finding that issues of fact surrounding the circumstances of the alleged use of excessive force — specifically whether it occurred without justification — that occurred while the plaintiff was on his way to the mental health unit precluded summary judgment); *Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 541 (S.D.N.Y. 2005) ("Courts in this district are hesitant to dismiss complaints alleging excessive

---

[10]  Plaintiff argues that "intentional, gratuitous uses of force that are not required to subdue an individual likely will fail the [Fourth Amendment] objective unreasonableness test." (Pl. Opp'n 12 (citing *Pierre-Antoine v. City of New York*, No. 04-CV-6987, 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) as holding that the "use of force against an already subdued individual would constitute an objectively unreasonable use of force under the Fourth[.]")).  For the reasons outlined above, Plaintiff's claim is more appropriately analyzed under the Fourteenth Amendment.

force even at the summary judgment stage if conflicts exist in the record regarding the degree and justification of force." (citation and internal quotation marks omitted)).  Drawing all inferences in favor of Plaintiff, a reasonable jury could find that Plaintiff was punched and that the singular act of punching Plaintiff in the face, while Plaintiff was being restrained on a stretcher with a gunshot wound to his back and was complaining about the amount of pain caused by the shooting, "shocks the conscience."

Reviewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented disputed issues of fact such that a reasonable jury could conclude that an officer punched Plaintiff in his face without provocation, and that the punch constituted excessive force and a violation of Plaintiff's substantive due process rights.

### d.  Qualified Immunity

"[A] decision dismissing a claim based on qualified immunity at the summary judgment stage may only be granted when a court finds that an official has met his or her burden demonstrating that no rational jury could conclude '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"  *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012); *see also Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013) ("Two questions inform qualified immunity analysis. First, do the facts show that the officer's conduct violated plaintiff's constitutional rights?  If the answer to this question is no, further inquiry is unnecessary because where there is no viable constitutional claim, defendants have no need of an immunity shield.  But if the answer is yes, or at least not definitively no, a second question arises: was the right clearly established at the time of defendant's actions?").  "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a *reasonable officer* that his conduct was

unlawful in the situation he confronted." *Zalaski*, 723 F.3d at 389 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Therefore, "even if a right is clearly established in certain respects, qualified immunity will still shield an officer from liability if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder." *Taravella v. Town of Wolcott*, 599 F.3d 129, 135 (2d Cir. 2010) (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)); *see also Bonilla v. United States*, 357 F. App'x 334, 335 (2d Cir. 2009) ("Although qualified immunity is a question of law for the Court, if there are factual disputes that bear directly upon whether it was objectively reasonable for an official to believe that he was acting lawfully, these disputes must be resolved by a jury before the legal question can be addressed." (citing *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003))); *Higazy v. Templeton*, 505 F.3d 161, 170 (2d Cir. 2007) ("Though immunity ordinarily should be decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required . . . ." (quoting *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994))).

Freedom from the use of excessive force is a clearly established constitutional right, and therefore the issue is whether it was objectively reasonable for the officer to believe that his actions, as described by Plaintiff, did not violate Plaintiff's right to be free from the use of excessive force. *See Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (holding that a police officer is immune if he had "an objectively reasonable belief that his actions [were] lawful"). The factual circumstances surrounding the action are disputed. Plaintiff argues that he was

punched in the face without provocation, and Defendants argue that Plaintiff was not punched and that they only used necessary force to calm Plaintiff.  A reasonably jury could, crediting Plaintiff's testimony, determine that no reasonable officer could believe that his actions were lawful, but a reasonable jury could equally conclude, crediting Defendants' evidence, that it was objectively reasonable for the officer to believe that his actions were lawful.  *See Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 609 (S.D.N.Y. 2013) ("[I]n the event that there are triable disputes as to the circumstances that could dictate whether the defendant[ ] could reasonably believe that his [or her] conduct was lawful, summary judgment based on an immunity defense must be denied." (quoting *Allen v. N.Y.C. Dep't of Corr.*, No. 06-CV-7205, 2010 WL 1644943, at *15 (S.D.N.Y. March 17, 2010) (citations omitted)); *Pooler*, 897 F. Supp. 2d at 29–30 (finding that genuine issues of material fact regarding the circumstances in which force was used precluded summary judgment based on qualified immunity); *Atkins v. Cnty. of Orange,* 372 F. Supp. 2d 377, 402 (S.D.N.Y. 2005) ("In the case at bar, there is an issue of fact surrounding the circumstances of the alleged excessive force.  [The plaintiff] maintains that he was purposely slammed into walls by the COs on the way to the mental health unit, while defendants maintain that if [plaintiff's] body did bump into any walls, it was an accident because the COs were merely slipping on water that was on the floor as a result of the broken sprinkler.  These factual issues preclude summary judgment on the defense of qualified immunity.").  The Court cannot, at the summary judgment stage, determine that the officer punched Plaintiff in his face in order to calm him down, nor can it determine that, even if he did so, a reasonable jury would be compelled to find such a punch objectively reasonable.  Viewing the facts in the light most favorable to Plaintiff, the offending officer is not entitled to qualified immunity because there are

genuine disputes of material fact regarding whether the officer acted reasonably in employing the type of force used against Plaintiff under these circumstances.

> **e.    Intentional Infliction of Emotional Distress**

To maintain a claim for intentional infliction of emotional distress, a plaintiff must establish:  "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993); *see also Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir. 1995) (outlining test for intentional infliction of emotional distress); *Cardona v. Cmty. Access, Inc.*, No. 11-CV-4129, 2013 WL 304519, at *8 (E.D.N.Y. Jan. 25, 2013) (same).  "New York courts have been 'very strict' in applying these elements."  *Gay*, 60 F.3d at 89 (citing *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985)).  "[T]he standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'"  *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell*, 81 N.Y.2d at 122).  The offending conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" and is of such a nature that it is "utterly intolerable in a civilized community."  *Marmelstein v. Kehillat New Hempstead*, 11 N.Y.3d 15, 22–23 (2008) (quoting *Murphy v. Am. Home Products Corp.*, 58 N.Y.2d 293, 303 (1983)); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 564 (S.D.N.Y. 2012) (noting that "New York sets a particularly high bar" for intentional infliction of emotional distress cases requiring "conduct that is so 'extreme and outrageous'" (citations omitted)).

Plaintiff's intentional infliction of emotional distress claim is based on allegations that Defendants "assaulted and battered, falsely imprisoned, falsely arrested, wrongfully detained and maliciously prosecuted the Plaintiff"; Defendants "falsely accused the Plaintiff of criminal

activities that the Defendants knew or should have known were false which actions were intended and did cause the Plaintiff to suffer great indignities"; and Defendants' "knowing, intentional and willful false accusations, false arrest and imprisonment, and malicious prosecution forced the Plaintiff to submit to baseless [c]ourt proceedings." (Am. Compl. ¶¶ 68–71.)  Plaintiff has admitted that he was not, in fact, arrested or prosecuted in connection with his shooting.  (Pl. Opp'n 3.)  At oral argument counsel for Plaintiff argued that the alleged punch that occurred after Plaintiff was in the ambulance constitutes "extreme and outrageous" conduct. (Oral Arg. Tr. 13:3–15:17.)  The Court disagrees.

   In New York, a claim for intentional infliction of emotional distress is "extremely disfavored," and "[o]nly the most egregious conduct has been found sufficiently extreme and outrageous to establish" such a claim. *Medcalf v. Walsh*, No. 12-CV-5091, 2013 WL 1431603, at *7 (S.D.N.Y. Apr. 9, 2013); *see also Tebbenhoff v. Elec. Data Sys. Corp.*, 244 F. App'x 382, 384 (2d Cir. 2007) (observing that New York's standard for extreme and outrageous conduct is "rigorous, and difficult to satisfy").  The "extreme and outrageous conduct" element requires that the conduct rise to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Rubinow v. Boehringer Ingelheim Pharms., Inc.*, 496 F. App'x 117, 119 (2d Cir. 2012) (citation and internal quotation marks omitted); *see also Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d Cir. 2009) ("[C]ourts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment or intimidation. . . . [A] court may decide whether alleged conduct is sufficiently outrageous as a matter of law." (citations and internal quotation marks omitted)); *Lan Sang v. Ming Hai*, No. 12-CV-7103, 2013 WL 3215458, at *16 (S.D.N.Y. June

26

27, 2013) ("'[T]he rigor of the outrageousness standard is well established.'  Conduct must have

been 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'"

(citations omitted)).  A single act of force employed while trying to transport a patient to the

hospital for treatment following a traumatic gunshot injury, even if determined to be

unreasonable, does not reach the high threshold of "extreme and outrageous conduct" required

under New York law.  *See, e.g.*, *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 405

(S.D.N.Y. 2009) ("[T]he force allegedly used on [the plaintiff] by the interrogating detectives,

even if excessive, was hardly of such brutality as to take this out of the mainstream of cases

involving excessive force after arrest."); *Elmowitz v. Executive Towers at Lido, LLC*, 571 F.

Supp. 2d 370, 379 (E.D.N.Y. 2008) ("New York courts have held that the extreme and

outrageous requirement was not satisfied in . . . *Saunders v. Taylor*, 6 Misc.3d 1015, 800

N.Y.S.2d 356, 2003 WL 24002776, at *3 (N.Y. Sup. Ct. 2003), where the defendant punched

plaintiff in the face and yelled vulgarities at her.").

Moreover, even assuming that a punch to Plaintiff's face under the circumstances

discussed above was extreme and outrageous, counsel confirmed at oral argument that the record

does not contain any evidence that the punch was intended to cause severe emotional distress, or

that Plaintiff suffered any severe emotional distress as a result of the punch.  (Oral Arg. Tr. 15:4–

19.)  *See, e.g.*, *James Biggs v. City of New York*, No. 08-CV-8123, 2010 WL 4628360, at *9

(S.D.N.Y. Nov. 16, 2010) (granting defendants summary judgment on plaintiff's intentional

infliction of emotional distress claim where the plaintiff "offered no medical evidence of severe

emotional injury"); *Sloane v. Kraus*, No. 06-CV-5372, 2010 WL 3489397, at *11 (S.D.N.Y.

Sept. 3, 2010) (plaintiff who alleged that "an officer held a gun to his back in the Shelter

bathroom and punched him in the face following his arraignment" failed to establish an intentional infliction of emotional distress claim where, *inter alia*, the plaintiff failed to "show that he has suffered severe emotional distress as a result of these alleged incidents"); *Pepe v. Maklansky*, 67 F. Supp. 2d 186, 187 n.1 (S.D.N.Y. 1999) (dismissing intentional infliction of emotional distress claim of one of the plaintiffs where that plaintiff failed to present supporting medical evidence that he suffered severe emotional distress). Plaintiff simply has no evidence to support his claim of intentional infliction of emotional distress and the claim is dismissed.

**III.  Conclusion**

For the reasons discussed above, Defendants' motion for summary judgment is denied as to Plaintiff's claim for excessive force but granted as to Plaintiff's claim for intentional infliction of emotional distress.

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 27, 2013
       Brooklyn, New York